**Affirmed and Memorandum Opinion filed July 26, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00816-CV
_____

**NATASHA WILLIAMS, Appellant**

**V.**

**CANPRO INVESTMENTS, LTD. AS SUCCESSOR IN INTEREST TO CANIT REHENCY UNLIMITED PARTNERSHIP, UNILEV MANAGEMENT CORP., AND GTE MOBILNET OF SOUTH TEXAS LIMITED PARTNERSHIP D/B/A VERIZON WIRELESS, A LIMITED PARTNERSHIP INCLUDING SAN ANTONIO MTA, LP, Appellee**

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-66778**

## MEMORANDUM OPINION

In this premises-liability case, Natasha Williams argues that the trial court erred in granting a no-evidence summary judgment for Unilev Management Corp. Unilev managed the office building where Williams worked and was injured. Because Williams failed to present more than a scintilla of evidence that Unilev knew or should have known of the dangerous condition that injured her, we affirm the trial court's rendition of no-evidence summary judgment for Unilev.

# I. Factual and Procedural Background

In 2006, when the events giving rise to this suit took place, Unilev managed a Houston office building then owned by Canit Regency Unlimited Partnership. At that time, Williams's employer, Arbitron, Inc. was subleasing the third floor of the building from Verizon Wireless, L.P. On November 18, 2006, Williams was working in an Arbitron training room on the third floor when the wheel of her chair slid into a hole in the concrete that was concealed by a carpet. Williams fell forward, injuring her back and wrist. Williams sued Canpro Investments, Ltd.,[1] Unilev, and Verizon, alleging that the defendants had collectively "owned, leased and/or controlled" the premises; maintained a known or discoverable dangerous condition on the premises about which they knew or should have known; and failed to exercise reasonable care to reduce or eliminate the risk. Williams requested damages for physical pain and impairments, mental anguish, medical expenses, and lost wages.

Canpro and Unilev jointly moved for traditional summary judgment on the bases that (1) Canpro had not been the owner of the building at the time of Williams's injury, and (2) Unilev lacked notice of the existence of the hole. The trial court granted summary judgment for Canpro while denying it for Unilev. Unilev then moved for no-evidence summary judgment, contending that Williams had failed to present any evidence that Unilev (a) owned, occupied, or maintained any control over Arbitron's office space; or (b) had notice of any alleged defect in the premises. In response, Williams argued that Unilev, as property manager, should be presumed to have had sufficient control over the premises to give rise to a duty of care. She presented no evidence on this point. Williams also argued that the correct standard for premises liability is whether the defendant "knew or should have known" of the dangerous condition. Williams presented the following evidence that Unilev was liable under this standard:

---

[1] Canpro bought the building from Canit between the time Williams was injured and the time she filed suit.

2

- Deposition transcripts in which Janet Sanford, Unilev's "Asset Manager," testified that Unilev had hired the security company for the building and that it was standard practice for the building security to write daily reports, which a Unilev administrative assistant would then review;

- An affidavit in which Lynae Parker, a co-worker of Williams with Arbitron, stated that she had reported the hole in the floor to a building security guard in February or March of 2005—about a year and a half before Williams's injury—and that the security guard had responded that he would report the matter to building management; and

- A deposition transcript in which Gloria Cabrera, a Real Estate Operations Specialist with Verizon, stated, "I don't know specifically why this hole is there; but I'm going to say that if somebody had previously core drilled or had drilled into the floor [to run cabling or wiring through the floor], that that's probably why that hole was there." Cabrera added that core drilling had been done when Verizon moved into the building.

In response, Unilev maintained that it had no control over Arbitron's office space. Unilev attached a copy of Arbitron's 2003 subleasing agreement with Verizon in which, according to Unilev, Arbitron took on the duty to maintain and repair the property. Unilev also attached another portion of Sanford's deposition transcript in which Sanford testified that "most of the floors [of the building] were [occupied by] full-floor tenants, and we did not have access cards to—to get in. But [the security guard] could check stairwells." Finally, Unilev objected to Parker's affidavit as hearsay. Williams responded with a deposition transcript in which she, Williams, testified that after her injury, she was not allowed to go back to Arbitron's offices to take a picture of the hole without the escort of a Unilev employee and that the Unilev employee later texted a picture of the hole to Williams.

The trial court granted Unilev's motion for no-evidence summary judgment by written order on August 26, 2011. At the bottom of the order, the trial judge wrote, "Defendant's objection to the affidavit of Lynae Parker is sustained as hearsay." In her sole issue on appeal, Williams argues that the trial court erred in granting Unilev's motion for no-evidence summary judgment because (1) Unilev, as property manager, should be assumed as a matter of law to have had sufficient control over the premises to give rise to a duty of care; and (2) Unilev knew or should have known of the dangerous condition that injured Williams.

## II. ANALYSIS

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, inc. v. Tamez*, 206 S.W.3d 572, 582. We review the evidence presented by the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to that party if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *Id*. (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2006) and *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. The evidence is insufficient if "it is 'so weak as to do no more than create a mere surmise or suspicion'" that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp*., 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Kroger Tex., L.P.*

4

*v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)). When, as here, the order granting summary judgment does not identify the grounds upon which the motion was granted, the summary judgment should be affirmed if any of the independent summary judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000); *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 718–19 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

The scope of the duty owed in a premises defect case varies according to the claimant's status as invitee, licensee, or trespasser. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 910 (Tex. App.—Houston [14th Dist.] 2009, no pet.). An invitee is someone who enters land with the owner's knowledge and for the mutual benefit of both. *Id.* at 909 (citing *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). An owner or occupier of land must use reasonable care to protect an invitee from known conditions that create an unreasonable risk of harm, and conditions that should be discovered by the exercise of reasonable care. *Id.* (citing *CMH Homes v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000), and *Ruvalacaba*, 64 S.W.3d at 134). To establish liability, a plaintiff-invitee must prove that (1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) the owner's failure was a proximate cause of injury to the invitee. *Samco Props., Inc. v. Cheatham*, 977 S.W.2d 469, 474–75 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)); *see Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (phrasing knowledge element as "actual or constructive knowledge of some condition on the premises"). Constructive knowledge is defined as knowledge that a person, after reasonable inspection, ought to have or has reason to have. *See Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 700 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Constructive knowledge may be imputed when the premises

5

owner-operator had a reasonable opportunity to discover and to remedy an allegedly dangerous condition. *See id*.; *CMH Homes*, 15 S.W.3d at 102.

In response to Unilev's motion for no-evidence summary judgment, Williams failed to present any evidence that Unilev knew or should have known of the dangerous condition that injured her.[2] Williams's strongest evidence of actual knowledge was Lynae Parker's affidavit, in which Parker stated that she had reported the hole in the floor to a building security guard in February or March of 2005—about a year and a half before Williams's injury—and that the security guard had responded that he would report the matter to building management. However, Unilev objected to the entire content of the affidavit—both Parker's alleged statement to the security guard and the security guard's response—and the trial court wrote on the summary judgment order, "Defendant's objection to the affidavit of Lynae Parker is sustained as hearsay." Williams does not contest this ruling on appeal. This affidavit therefore cannot be considered as summary-judgment evidence. *See City of Keller*, 168 S.W.3d at 810. Williams also presented a deposition transcript in which Janet Sanford, Unilev's "Asset Manager," testified that Unilev had hired the security company for the building and that it was standard practice for the building security to write daily reports, which a Unilev administrative assistant would then review. However, without Parker's affidavit, there is no evidence that any incident involving the hole was ever reported to building security.

To show that Unilev should have known about the hole, Williams relies on Cabrera's deposition testimony as evidence that "[t]he hole in the floor beneath the carpet had been there since at least some time before 2003." But the length of time that the hole was there only matters to the extent it helps show that Unilev had a reasonable opportunity

---

[2] Unilev argues that because Williams was a *business* invitee, she had to show "actual or constructive knowledge" and not merely that Unilev "knew or should have known" of the dangerous condition. As the cases cited above show, however, there is no difference between these standards. *See, e.g.*, *Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d at 700 (constructive knowledge is defined as knowledge that a person, after reasonable inspection, ought to have or has reason to have).

to discover and to remedy it.  *See CMH Homes*, 15 S.W.3d at 102.  There are other factors in determining whether such an opportunity existed, including whether Unilev had regular access to Arbitron's office space.  Williams failed to present any evidence that Unilev had regular access to Arbitron's office space.[3]  Neither party offered Unilev's service contract into evidence.   The only evidence that either side presented on this point was another part of Sanford's deposition testimony, in which Sanford testified that Unilev had no access card to the business spaces in the office building and the security guards could check stairwells.  Williams did testify in a deposition that some time after her injury, she tried to go back into Arbitron's offices to take a picture of the hole.   According to Williams, she was stopped by someone named Renee[4] until she returned with the escort of a Unilev employee, who later texted a picture of the hole to Williams.  But even accepting Williams's testimony as true, it demonstrates nothing about Unilev's access to Arbitron's office space on a regular basis; it shows only that Arbitron decided not to allow Williams on the premises unescorted after she was injured there.   Further, even if Unilev had the ability to inspect the area on a daily basis, Williams presented no evidence that a reasonable inspection would have yielded knowledge of the hole, which was covered by a carpet and had apparently caused no problems since Verizon had originally moved into the suites in the 1990's.  *See Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (noting that over a ten-year period no customer visiting the car dealership had been injured by the allegedly dangerous ramp, nor had the dealership received any complaints about the ramp's safety).

In the absence of a record of the grounds for the trial court's order, we must affirm if any of the stated grounds is meritorious.   Because Williams failed to present any evidence

---

[3] Williams cites *Lefmark Management v. Old*, 946 S.W.2d 52 (Tex. 1997), to support the proposition that "a defendant property manager for a premises could be assumed to have sufficient control over the premises for a duty of care to arise."   But the fact that Unilev had control does not mean it had sufficient access to Arbitron's office space to give it a reasonable opportunity to inspect for defects.   On this point, Williams had to present evidence, and she failed to do so.

[4] There is no indication in the record of this person's identity.

7

that Unilev knew or should have known about the condition that injured her, we hold that the trial court correctly granted Unilev's motion for no-evidence summary judgment. We overrule Williams's sole issue on appeal and affirm the trial court's judgment.

## IV. CONCLUSION

We affirm the trial court's judgment.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Boyce, Jamison, and Christopher.